```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                    :
DOV LEVINE,                                         :    **MEMORANDUM**
                                                    :    **DECISION & ORDER**
                                     Plaintiff,     :
                                                    :
            -against-                               :    06 Civ. 0590 (MDF)
                                                    :
THE READER'S DIGEST ASSOCIATION, INC.,              :
                                                    :
                                     Defendant.     :
                                                    :
---------------------------------------------------------------x
```

MARK D. FOX, United States Magistrate Judge.

Plaintiff Dov Levine ("Levine") seeks relief from a jury verdict returned in favor of Defendant The Reader's Digest Association, Inc. ("RDA") after a jury trial on his action for age discrimination over which I presided pursuant to the consent of both parties under 28 U.S.C. § 636(c). Levine has moved for a new trial pursuant to Fed. R. Civ. P. 59. RDA opposes his motion and additionally seeks dismissal of the action as time-barred. For the reasons that follow, Levine's motion for a new trial is denied, and RDA's motion to dismiss is granted.

## BACKGROUND

The facts of the case are set forth in prior decisions in this litigation. *See* Doc. #'s 23, 59. Having been terminated from his employment with RDA's Swiss subsidiary, *Das Beste de Reader's Digest* ("*Das Beste*"), after 31 years, Levine, a U.S. citizen, commenced this action against RDA, claiming a violation of the Age Discrimination in Employment Act ("ADEA"). Following a six-day trial, the jury rendered a verdict in favor of RDA, finding that Levine had failed to prove that RDA and *Das Beste* constituted a single employer within the meaning of the ADEA such that RDA could be held liable for the acts of *Das Beste*. Consequently, the jury did

not reach the question of whether RDA had discriminated against Levine on the basis of his age. A judgment was entered on the verdict (Doc. # 91), and soon thereafter, Levine filed the instant motion (Doc. # 98).

## DISCUSSION

I. **Levine's Rule 59 Motion for a New Trial**

    A. **Legal Standard**

For a district court to order a new trial under Fed. R. Civ. P. 59(a), it must find that "the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice, *i.e.*, it must view the jury's verdict as against the weight of the evidence." *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003) (internal quotation marks and citation omitted). Moreover, Fed. R. Civ. P. 61 states, "Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

In the case of allegedly erroneous evidentiary rulings, such a ruling "that does not affect a party's 'substantial right' is . . . harmless." *Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*, 370 F.3d 314, 319 (2d Cir. 2004) (citations omitted). "Whether an evidentiary error implicates a substantial right depends on the likelihood that the error affected the outcome of the case." *Id.* (internal quotation marks and citation omitted). A court will not conclude that "a substantial right was affected unless it is likely that in some material respect the factfinder's judgment was 'swayed by the error.'" *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d Cir.

1997) (citation omitted).

B.      **Erroneous Jury Instruction**

Levine argues that the Court gave an erroneous jury instruction concerning the issue of whether RDA and *Das Beste* constituted a "single employer." He contends that the Court erred by including in the instruction language cited with approval by the Second Circuit in *Murray v. Miner*, 74 F.3d 402, 405 (2d Cir. 1996), that "the critical question is what entity made the final decisions regarding employment matters related to the person claiming discrimination," Tr. 788,[1] because the *Murray* case did not involve a wholly-owned subsidiary, but rather, a successor entity. However, this same language, which comes from the Fifth Circuit case of *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983), was also cited with approval by the Second Circuit in a case which did involve a wholly-owned subsidiary, *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995). Thus, the Court's instruction regarding the "single employer" test was proper, and there is no basis for granting a new trial on this ground.

C.      **Adverse Inference Instruction Based on Failure to Produce Certain E-mails**

Levine argues that the Court erroneously denied his request for an adverse inference instruction based on RDA's failure to produce internal e-mails concerning the restructuring of Reader's Digest in Germany, Switzerland, and Austria in August 2003. Prior to trial, Levine's request for an adverse inference instruction was denied by then-Chief Magistrate Judge Lisa Margaret Smith, in a Report and Recommendation filed on December 21, 2007. Judge Smith noted that there was a year and a half gap between Levine's termination from *Das Beste* in October 2003 and the initiation of his federal lawsuit in the United States District Court for the

---

[1]"Tr." denotes citations to the trial transcript. *See* Doc. #'s 88, 89, 90, 97, 99.

District of Columbia in June 2005, and she found that "the time line of events described by the Plaintiff does not support his contention that all documents pertaining to the 2003 restructuring plan, specifically including emails, would or should have been retained up until the point he commenced suit in 2005. . . . [T]he Plaintiff has not established that the Defendant should have been aware of that fact that it was under an obligation to retain such documents in August of 2003." Report & Recommendation [Doc. # 67] at 10-11. However, Judge Smith recommended that RDA be required to provide Levine with its corporate document retention policy so that Levine could revisit the issue, "if appropriate, on a motion *in limine* or during trial." *Id.* at 11.

At a conference on February 21, 2008, the Court rendered a decision on the record which agreed with Judge Smith's analysis and noted that during the time period between Levine's termination and the initiation of his federal lawsuit, "there is no basis in the record upon which this Court could find that RDA was on notice that all e-mails and records concerning its 2003 business restructuring were going to be relevant to this litigation." 2/21/08 Transcript [Doc. # 94] 25-26. However, the Court found that RDA's document retention policy was significant to determining the adverse inference issue and directed RDA to produce its policy "governing the retention of e-mails that was in effect between 2003 and 2005 in order to permit reconsideration of this issue prior to trial." *Id.* 26.

Subsequently, the Court had an opportunity to review both RDA's document retention policy, as well as further submissions of the parties concerning RDA's failure to produce e-mails about the corporate restructuring. Before the start of trial, on March 10, 2008, the Court ruled that Levine was not entitled to an adverse inference instruction based on RDA's failure to produce the requested e-mails. The Court found that because RDA did not have an electronic

4

document retention policy in place until March 16, 2004, and because RDA's counsel represented to the Court that prior to March 16, 2004, RDA did not have a policy regarding the retention of e-mails, non-e-mail electronic documents, or hard copy documents, there was no basis for finding that RDA should have retained the e-mails in question without notice of the potential for litigation related to Levine's termination. However, Levine provided no correspondence from the time period following his termination which would have put RDA on notice that the restructuring formed a basis of, or was in any way relevant to, his age discrimination claim. Consequently, the Court declined to give the requested jury instruction.

In challenging the Court's ruling, Levine in no way explains how this alleged error was anything more than "harmless" under Rule 61, or in any way caused the jury to reach a "seriously erroneous result," as required for granting a new trial under Rule 59(a). To the contrary, with respect to the single employer issue, the jury was nevertheless given an adverse inference instruction based on RDA's failure to provide Levine with contact information for former and current employees of RDA and *Das Beste*. Tr. 788-89. Therefore, there is no basis for finding that an additional adverse inference instruction on this issue would have altered the outcome.[2]

### D. Dismissal of Retaliation Claim and Exclusion of Evidence Related to that Claim

Levine challenges the Court's dismissal of his retaliation claim prior to trial and the Court's resulting decision to preclude testimony at trial regarding that claim. However, Levine presents no legal argument in support of his contentions. Rather, he asserts that the Court's

---

[2]Furthermore, as noted by RDA in its opposition papers, the evidence at trial failed to support Levine's contention that his termination was part of the August 2003 restructuring. *See* Def.'s Mem. of Law in Opp. [Doc. # 101] at 5.

preclusion of testimony regarding what transpired with respect to his severance pay was "erroneous and prejudicial, particularly since the Court permitted the Defendant's exhibits and testimony relating to the Swiss severance offer. Defendant's Exhibits 9, 10." Pl.'s Mot. for a New Trial [Doc. # 98-2] at 4. Levine further asserts that "[t]his line of testimony and exhibits led the jury to conclude that Plaintiff had been paid the proposed severance amount with no difficulty at about the time of his termination." *Id.* As noted by Levine, his attorney objected on the record to the exclusion of evidence concerning his retaliation claim. *See* Tr. 115-17.

First, given that the Court properly dismissed Levine's retaliation claim (and Levine provides no basis for concluding otherwise), there is no ground for finding that the Court erred in precluding testimony regarding that claim, as it had no bearing on Levine's discrimination claim. Likewise, whatever the jury may have been led to conclude about the severance from the testimony and evidence that was admitted at trial, it had no relevance to the discrimination claim. Second, the exhibits in question, Defendant's Exhibits 9 and 10, were introduced into evidence by Levine, not RDA. *See* Tr. 106-07. Therefore, RDA did not cause the alleged prejudice to Levine, if any, resulting from these exhibits. In sum, there is no basis for granting a new trial on this ground.

### E. Exclusion of Redacted Versions of E-mails

Levine argues that the Court erred by failing to admit into evidence at trial the redacted versions of certain e-mails which were admitted into evidence in their unredacted form as Plaintiff's Exhibits 4A, 5A, 6A, and 7A. He contends that the redactions made during discovery by RDA "are relevant to the Plaintiff's claims that the Defendant has, from the time of Plaintiff's termination to the date of trial, been providing different false pretexts to conceal the age

6

discrimination it practiced against the Plaintiff." Pl.'s Mot. for a New Trial at 5. However, it is both unclear how, and purely speculative that, such redactions would have helped to prove discriminatory conduct at the time of Levine's termination, and Levine fails to show how the exclusion of this evidence affected a "substantial right," *i.e.*, that "in some material respect the factfinder's judgment was 'swayed by the error.'" *Perry,* 115 F.3d at 150 (citation omitted). Therefore, this is not a proper basis for granting a new trial.

### F. Admonishments by the Court

Levine claims that an "impression of hostility" was conveyed to the jury when the Court unjustifiably admonished him during his testimony at trial. When it comes to reviewing a trial judge's conduct, the question is not "whether the . . . conduct left something to be desired, or even whether some comments would have been better left unsaid," but "whether the judge's behavior was so prejudicial that it denied [a party] a fair, as opposed to a perfect, trial. The court's comments and rulings may not be viewed in isolation but must be evaluated in light of the record as a whole." *United States v. Rosa*, 11 F.3d 315, 343 (2d Cir. 1983) (internal quotation marks and citations omitted). "[T]he district judge, in conducting a criminal or civil trial, acts as more than a mere moderator or umpire. His function is to set the tone of the proceedings and exercise sufficient control to insure that the trial will be an orderly one in which the jury will have the evidence clearly presented. This is a duty which the judge cannot discharge by remaining inert[.]" *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 436 (2d Cir. 1993) (internal quotation marks and citations omitted); *cf. Liteky v. United States*, 510 U.S. 540, 555-56 (1994) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a

7

bias or partiality challenge. . . . A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.").

Here, Levine cites to a number of admonishments, which he contends culminated in "an extended criticism of the Plaintiff." Pl.'s Mot. for a New Trial at 6. However, the admonishments cited by Levine were minor, and hardly prejudicial, such as comments to avoid giving "narratives," Tr. 56; to "just answer the question" *id.* 60, 279, 314; *see also id.* 109 ("You've answered the question, sir, thank you."); and not to "testify as to what other people were thinking or what was in their minds," *id.* 99.

Moreover, the "extended criticism" amounted to no more than the Court's performance of its function to exercise control over the conduct of the proceedings:

> THE COURT: Excuse me. I told you three times. I really don't want to waste any more time telling you this again. You're an intelligent man. You know what you're doing. I've told you to just answer the lawyer's questions. Any other points that need to be made, any clarifications or any further development of any point [your attorney] is perfectly capable of picking those up on redirect examination. By continuing to do this, you continue to cause me to interrupt and you're just wasting time. Please follow the Court's directions. Let's proceed.

*Id.* 333-34. Indeed, a similar admonishment was given to one of RDA's witnesses who engaged in similar behavior: "Mr. Neunzig, again, you're volunteering information beyond the scope of the question. Just answer the question. If anything else needs to be covered, [your attorney] will do it on redirect examination. That's the third time I've had to say it to you. Please don't make me repeat it again. May we please proceed." *Id.* 563.

In addition, with respect to the "extended criticism" of Levine, the Court explained, outside the presence of the jury, that "[b]ecause of the repeated argumentative answers that the

8

plaintiff has given in his testimony this morning to some very specific questions by the defense attorney I found it necessary to admonish him several times. I don't want to have to do that again. [Counsel], during the break would you please counsel your client about the procedures." *Id.* 338. Thereafter, Levine's counsel requested that "the Court . . . please tell the jury that if in fact you thought it was necessary to say that to the plaintiff, that that does not indicate in any way your Honor's view regarding him personally or his case." *Id.*

When the jurors returned to the courtroom, the Court instructed them to disregard his admonishments of either a witness or an attorney and added, "If any expression of mine seems to indicate that I have any personal opinion on those matters, that I instruct you to disregard. It's the Court's responsibility to handle those matters and anything I say or do should have no impact on your determination." *Id.* 339-40. Later on, in charging the jury, the Court again explained, "I have not expressed nor have I intended to intimate any opinion as to which witnesses are or are not worthy of belief, what facts are or are not established, or what inference or inferences should be drawn from the evidence. If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it. You are, I repeat, the sole judges of all of the questions of fact submitted to you and of the credibility of all the witnesses." *Id.* 773. Thus, the Court's so-called admonishments were not prejudicial, particularly when viewed in light of the record as a whole.

Finally, Levine argues that the impression that the Court "rejected the Plaintiff's claim . . . was strengthened by the many times when the Court sustained wholly unspecified objections to questions asked by Plaintiff's counsel." Pl.'s Mot. for a New Trial at 6. However, he fails to cite to a single such instance, and such a conclusory statement is insufficient to establish that

9

these alleged (albeit unspecified) evidentiary rulings were anything more than harmless. *See Tesser*, 370 F.3d at 319 ("Whether an evidentiary error implicates a substantial right depends on the likelihood that the error affected the outcome of the case.") (internal quotation marks and citation omitted). Consequently, the Court will not grant a new trial on this ground.

### G. Admission into Evidence of EEOC Letter

Lastly, Levine argues that he was prejudiced by the Court's admission into evidence of the EEOC determination letter. The question of whether to admit EEOC findings into evidence is left to the discretion of the trial judge. *See Paolitto v. John Brown E.&C., Inc.*, 151 F.3d 60, 65 (2d Cir. 1998). As explained below, in this case, the Court properly exercised its discretion.

At trial, prior to admission of the EEOC letter, Levine's attorney offered into evidence RDA's response to his EEOC complaint, Tr. 123 (Plaintiff's Exhibit 23), and extensively questioned RDA's former General Counsel about that document. *Id.* 173-82. Levine's attorney thereafter offered into evidence a second letter submitted to the EEOC by RDA, and questioned RDA's former General Counsel about that document as well. *Id.* 182-85 (Plaintiff's Exhibit 24). Thus, further testimony concerning the EEOC proceedings was elicited on cross-examination of the former General Counsel, at which point RDA's attorney sought to have the EEOC determination letter admitted into evidence. *Id.* 225-26 (Defendant's Exhibit 27).[3]

The Court had already instructed the jury that "[t]he decision of the [Equal Employment Opportunity] Commission has no impact on your decision. Your job is to make an independent finding. You should not consider in any way any determination made by the EEOC." *Id.* 225.

---

[3]Prior to that, RDA's attorney also had the charge that Levine filed with the EEOC admitted into evidence. Tr. 223 (Defendant's Exhibit 55).

Thus, the EEOC letter was admitted into evidence for the sake of completeness "because [the jury had] already heard about the proceedings before the Equal Employment Opportunity Commission." *Id.* 228. However, the Court further instructed the jury, "That finding by law has nothing whatever to do with your decision and any credibility findings or any other findings that the Commission made has nothing to do with your decision here. You'll hear the evidence and you'll decide the facts of the case." *Id.*

When a subsequent reference was made to the EEOC determination, the Court cautioned, "Again, members of the jury, any determination that was made by a government agency involving the EEOC should have no bearing at all on your decision. The law provides that that decision happens in any case that's brought in this court by a plaintiff. What the Commission did has nothing to do with your determination. Please don't consider it in any way." *Id.* 342. Finally, the Court's charge to the jury reiterated, "Members of the jury, you've also heard testimony concerning an Equal Employment Opportunity Commission or EEOC investigation into the plaintiff's charge of discrimination against the defendant. As I instructed you several times during the trial, I now instruct you once again, you are to disregard any finding by the EEOC with respect to the merits of the plaintiff's charge. It is for you to decide in the context of this trial whether or not the defendant discriminated against the plaintiff because of his age." *Id.* 792-93.

Despite Levine's contention that he was prejudiced by the admission of the EEOC letter, the Court repeatedly instructed the jury that the EEOC determination was to have no bearing on its decision in this case, and the Second Circuit has "observed that, generally, it must be assumed that the jury followed instructions." *Tesser*, 370 F.3d at 320 (internal quotation marks and

11

citation omitted). Moreover, even if one assumes that admitting the EEOC determination letter in evidence was erroneous, Levine provides no basis for the Court to conclude that "it is likely that in some material respect the factfinder's judgment was 'swayed by the error.'" *Perry*, 115 F.3d at 150 (citation omitted). Therefore, there is no basis for granting a new trial on this ground.

## II. RDA's Motion to Dismiss the Action as Untimely

At the close of evidence at trial, RDA renewed its motion to dismiss based on Levine's failure to file his EEOC charge within the 180-day time period. *See* Tr. 664. RDA argued that the clock started running on October 29, 2003, when Levine received the termination letter from RDA (Plaintiff's Exhibit 1), and that therefore, his EEOC charge was untimely since it was filed 196 days later, on May 12, 2004 (Defendant's Exhibit 55). *Id.* 665. The Court determined, and the parties agreed, that this was a question of law, which the Court could decide post-verdict. *Id.* 665-66. Thus, in its papers in opposition to Levine's Rule 59 motion, RDA seeks the Court's decision on this issue.[4]

To bring an action under the ADEA, an individual must first file a charge with the EEOC, which charge must be filed "within 180 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1). In the case of a discriminatory discharge, the time period for filing a charge with the EEOC "starts running on the date when the employee receives a definite notice of the termination, not upon his discharge." *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 23 (2d Cir. 1985) (citations omitted); *see also Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (filing limitations period commences when allegedly discriminatory decision "was made

---

[4]Levine did not submit any papers in response to RDA's renewed motion.

and communicated" to the employee).

On October 29, 2003, *Das Beste* gave Levine a letter which terminated his employment with the company. *See* Pl.'s Ex. 1.[5] Prior to trial, on RDA's motion for summary judgment, the parties disputed whether the letter was "definite notice," in light of subsequent communications which took place during the month of November 2003 between Levine/his attorney and *Das Beste*/RDA. *See*, *e.g.*, Pl.'s Ex. 2 (November 11, 2003 letter from Levine to his direct supervisor, Tamara Mattiussi); Pl.'s Exs. 8, 10-11 (correspondence between Levine's attorney and RDA); Pl.'s Ex. 9 (letter from RDA's VP International Human Resources to Levine). While RDA maintained, and continues to maintain, that those communications relate to the "money and benefits Plaintiff might be provided as a consequence of his termination and not at all [to] any possible reinstatement to his former position at *Das Beste*," Def.'s Mem. of Law in Opp. [Doc. # 101] at 14, Levine and his attorney contended that "RDA's determination regarding Dr. Levine's dismissal was not made until November 26, 2003, when Mr. Brizel [RDA's former General Counsel] sent the letter to undersigned counsel as a response to letters and other communications received from Dr. Levine and his lawyer." Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J. [Doc. # 14] at 9.[6]

Nonetheless, Levine's testimony at trial establishes that the termination letter did, in fact, constitute "definite notice":

> Q. Now, [RDA's attorney] asked you whether you had sought

---

[5]The heading at the top of the letter is "Termination of our employment contract," and the first sentence of the letter states, "We terminate your employment contract with Das Beste aus Reader's Digest AG in due-date time per January 31, 2004." At the bottom of the letter, it states, "Understood and receipt acknowledged," below which is the date of October 29, 2003 and Levine's signature.

[6]The November 26, 2003 letter was Plaintiff's Exhibit 11 at trial.

> reinstatement with Reader's Digest after you were given the termination letter and responded to it. Why did you not seek reinstatement?
>
> A. Because of the dismissal letter.
>
> Q. Did you think you'd be able to work back at Reader's Digest after that letter?
>
> A. I thought that the dismissal letter, this would not allow me to work further in Reader's Digest. Only because it was a dismissal letter.

Tr. 358. Further evidence that the October 29th letter provided "definite notice" was Levine's testimony regarding his letter of November 11, 2003 (Pl.'s Ex. 2), which he sent to his immediate supervisor at *Das Beste*, Tamara Mattiussi, in response to the termination letter:

> Q. And the request you made in your submission of November 11th was for additional money, is that correct . . .?
>
> A. Yes.
>
> Q. For a settlement for money.
>
> A. Settlement for money, yes.
>
> Q. Because you assumed at that point that you could no longer work for the Reader's Digest?
>
> A. Yes.

Tr. 374.[7]

Moreover, even if the communications between Levine/his attorney and *Das Beste*/RDA during November 2003 could be considered an attempt to grieve the decision to terminate

---

[7]The letter itself states, in the second sentence, "I would like to point out why the two alternatives that were presented to me for severance pay are morally, legally and practically unacceptable." Pl.'s Ex. 2. It later goes on to state, "In summary, there are two very strong moral reasons to give Dov Levine a proper settlement . . . I hope to be in a position to tell my friends and acquaintances that I have received a fair settlement, as outlined above. I would like to end this letter by saying that in general I have enjoyed working for the Digest and in fact have felt like a family member of this institution. I sincerely hope that my view of the settlement, which was stated without exageration [sic] will be adopted." *Id.*

Levine's employment, that would not suffice to toll the running of the 180-day period for filing an EEOC charge. Indeed, "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Ricks*, 449 U.S. at 261 (citation and footnote omitted); *see also Miller*, 755 F.2d at 24 ("[T]he mere possibility that the decision might be reversed was not enough to label it advisory or ineffective for time-bar purposes.") (citation omitted). Nor can the November 2003 communications, insofar as they involved the issue of settlement, form the basis for equitably tolling the statute of limitations. *See Pfister v. Allied Corp.*, 539 F. Supp. 224, 227 (S.D.N.Y. 1982) ("There is no allegation that the defendant acted in bad faith or deceitfully lured the plaintiff into settlement discussions, or that it attempted in any way to cause the plaintiff to miss the appropriate filing date. Rather, the plaintiff himself requested that the defendant discuss settlement with him, and the '[d]efendant can hardly be faulted for its display of courtesy to plaintiff in this regard.' . . . In addition, apparently the only settlement proposals ever seriously discussed involved the payment of additional money to the plaintiff, and not a possible reinstatement.").[8]

In light of the foregoing, irrespective of any arguments made by Levine in support of his motion for a new trial, this action should nonetheless be dismissed as time-barred.

---

[8] Following up on Levine's November 11, 2003 letter concerning "a proper settlement," his attorney's letters to RDA of November 20, 2003 and November 24, 2003 challenge the termination as discriminatory and seek to achieve favorable terms for Levine in the departure from his employment. In the November 20th letter, his attorney states, "The purpose of this letter is to re-affirm Dr. Levine's wish that the unpleasant episode of his unjustified termination not result in any lasting hard feelings or in any public dispute with Reader's Digest." Pl.'s Ex. 8. The letter concludes, "I urge you to come to an accommodation with Dr. Levine which meets the minimal expectations he outlined in his letter to his supervisor of 11 November 2003. It is in Reader's Digest [sic] interest, as well as Dr. Levine's interest, to conclude 31 years of work that was highly productive and fruitful on an amicable note." *Id.* The November 24th letter states, "I continue to hope – as does Dr. Levine – that Reader's Digest will conclude its relationship with Dr. Dov Levine on a harmonious note." Pl.'s Ex. 10. Nowhere do these letters mention possible reinstatement.

In light of the foregoing, irrespective of any arguments made by Levine in support of his motion for a new trial, this action should nonetheless be dismissed as time-barred.

## CONCLUSION

For the foregoing reasons, it is hereby ordered that Levine's motion for a new trial is denied, and RDA's motion to dismiss the action as time-barred is granted.

Date: June 10, 2008
White Plains, New York

SO ORDERED,

_____
MARK D. FOX
UNITED STATES MAGISTRATE JUDGE